UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JOSE BENITEZ, JR.,

      Petitioner,

v.                                Case No.: 2:20-cv-1-SPC-MRM
                                Case No.: 2:14-cr-124-SPC-MRM

UNITED STATES OF AMERICA,

      Respondent.

_____/

### <u>OPINION AND ORDER</u>[1]

Before the Court is Petitioner Jose Benitez's Motion Under 28 U.S.C. §2255 to Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody (Doc. 1).[2]

## Background

On October 29, 2014, a grand jury charged Benitez with one count of armed bank robbery, in violation of 18 U.S.C. § 2113(a) and (d) (Count 1), and one count of using and carrying a firearm during the crime of violence alleged

---

[1] Disclaimer: Documents hyperlinked to CM/ECF are subject to PACER fees. By using hyperlinks, the Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide, nor does it have any agreements with them. The Court is also not responsible for a hyperlink's availability and functionality, and a failed hyperlink does not affect this Order.

[2] The Court cites to documents from 20-cv-1 as (Doc. _) and documents from 14-cr-124 as (Cr-Doc. _).

in Count 1, in violation of 18 U.S.C. § 924(c)(l)(A)(ii) (Count 2). (Cr-Doc. 1). Attorney Robert P. Harris entered a notice of his appearance for Benitez a few weeks later and represented him through trial and sentencing.

At a June 4, 2015 status conference, Benitez announced he intended to plead to Count 1, but not Count 2. (ECF. 125 at 2). The government expressed concern that a plea to Count 1 would create difficulty in defending against Count 2. (Cr-Doc. 125 at 3-4). Count 1 of the Indictment charged that Benitez,

> did knowingly by force and violence and intimidation, take and cause to be taken from the person and presence of bank employees…United States currency in the approximate amount of $12,824.00…and in committing said offense, [Benitez] did assault and put in jeopardy the life of another person by the use of a dangerous weapon, *that is a firearm*.

(Cr-Doc. 1 (emphasis added)). The prosecution argued that because of the italicized language—which the Court will refer to as the "firearm phrase"—a plea colloquy would necessarily include acknowledgment that Benitez used a firearm during the course of a bank robbery, which would leave very little room for a defense of Count 2. (Cr-Doc. 125 at 4). Harris suggested the firearm language was surplusage, so Benitez could plead guilty to Count 1 without admitting he used a firearm. (*Id.* at 5). The Court continued the hearing to allow the parties to present additional argument and case law.

On July 13, 2015, the Court adopted Benitez's position. It announced that Benitez could plead guilty to Count 1 by admitting he used a dangerous

2

weapon—but not necessarily a firearm—and go to trial on Count 2. (Cr-Doc. 126 at 2–3). The Court cautioned that pleading to Count 1 would establish "a lot of the elements to [Count 2]." (Id. at 2-3). On August 10, 2015, Harris advised the Court that Benitez would not plead guilty to either count. (Id. at 3)

On September 21, 2015, the Court conducted a final pretrial conference. The government asked the Court to inquire on the record whether Benitez agreed with Harris's intended trial strategy. The Court asked Benitez, "Have you fully discussed the strategy in regard to whether you would admit the bank robbery and litigate the firearm or weapon issue?" (Cr-Doc. 128 at 25). Benitez responded, "Yeah we discussed everything." (Id. at 25). Harris clarified they would concede the bank robbery while challenging the "dangerous weapon" element of Count 1 and all of Count 2. (Id. at 26-27). Benitez agreed. (Id. at 27).

The Court then raised the potential impact Benitez's strategy might have on an "acceptance of responsibility" sentencing reduction. (Id. at 28). The Court cautioned, "if the defendant – even though you may be admitting during the course of the trial to the bank robbery, I'm not sure he would get the three levels, or at least the two-level reduction for acceptance of responsibility because he is going to trial." (Id. at 28). Harris responded, "I have brought it up with Mr. Benitez, and I haven't done the research, obviously I'll wait for

sentencing for that.  But our stance at this point would be that if we are conceding the robbery itself, then he probably deserves acceptance of responsibility on that, but we'll litigate that later on." (*Id.* at 29).

On September 23, 2015, just before trial began, the Court confirmed again with Benitez that he wished to contest both counts.  The Court asked, "I know that we had a final pretrial conference the other day and at that time counsel indicated that you were wishing to assert the defense that you did commit the robbery but not with a firearm. And that's still your intent?" Benitez responded, "Yes, ma'am." (Cr-Doc. 129 at 7-8).  Benitez then confirmed that he fully discussed this strategy with counsel, and that it was his decision to proceed with this strategy. (*Id.* at 7-8).

During opening statement, Harris acknowledged that Benitez robbed the bank as charged, but claimed he was holding a toy gun—not a firearm—when he did it. (*Id.* at 129).  Later, Benitez took the stand and testified that he robbed the bank with a realistic-looking replica gun. (Cr-Doc. 130 at 53-54). The jury found Benitez guilty of Count 1 and not guilty of Count 2. (Cr-Doc. 87).  Count 1 of the verdict form included the lesser offense of "Bank Robbery," but the jury found him guilty of "Bank Robbery by assaulting and putting in jeopardy the life of another person by the use of a Dangerous Weapon." (*Id*).

At the sentencing hearing, Harris objected to the six-level increase in the sentencing guideline calculation for the use of a firearm in the crime. (Cr-Doc.

131 at 6). He argued Benitez "was acquitted of the firearm," so he should only get "a four-level increase for if a dangerous weapon was otherwise used." (*Id.* at 6).

Harris also sought a sentence reduction for acceptance of responsibility. He argued, "The only challenge we put forward to prove was whether this was a firearm or not and the ability of the witnesses to recount and remember what they saw in terms of the firearm…We did not put the government to its burden of proof in the sense that we were challenging the evidence." (*Id.* at 12). Harris explained that Benitez wanted to plead guilty to Count 1 but got spooked by the "firearm" language in the Indictment:

> because the government charged him with an enhancement that we disagreed with, we had to challenge the government's assertion of proof on that issue alone. The government charged him with something that he didn't do and something he did, and we had to make sure that the Court understands he didn't carry a firearm. And we had to go to trial for that reason.

(*Id.* at 14–15). The government opposed any reduction for acceptance of responsibility because, ultimately, it had to prove its case beyond a reasonable doubt. (*Id.* at 18–19).

The Court continued the sentencing hearing to allow the parties to submit case law to support their positions. When the parties reconvened on January 25, 2016, the Court ruled in Benitez's favor on the firearm issue and applied the four-level enhancement instead of the six-level enhancement. (Cr-

Doc. 132 at 4).  The Court denied the two-point reduction for acceptance of responsibility because it did not find Benitez's testimony about his remorse credible or sincere, and because he decided to go to trial and put the government to its burden of proof.  (Cr-Doc. 132 at 7).  The Court found an upward variance from the guideline range appropriate and sentenced Benitez to 122 months' imprisonment and five years of supervised release.  (Id. at 14-15).

On appeal, Benitez—through attorney Andrew Greenlee—argued the Court committed two errors: "(1) omitting from its jury instructions the phrase 'that is a firearm,' which was included in Benitez's indictment and (2) admitting into evidence some of Benitez's prior convictions."  United States v. Benitez, 732 F. App'x 783, 784 (11th Cir. 2018).  The Eleventh Circuit found no error and affirmed.

Benitez raises four grounds in his §2255 Petition.  All four allege ineffective assistance of counsel, and Ground 2 asserts error by both trial counsel and the Court.

## Applicable Habeas Law

### A. 28 U.S.C. § 2255

A prisoner in federal custody may move for his sentence to be vacated, set aside, or corrected on four grounds: (1) the imposed sentence violates the Constitution or laws of the United States; (2) the court lacked jurisdiction to

impose the sentence; (3) the sentence was over the maximum authorized by law; or (4) the imposed sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). A § 2255 motion "may not be a surrogate for a direct appeal." *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (stating § 2255 relief is "reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice" (internal quotations omitted)). The petitioner bears the burden of proof on a § 2255 motion. *Rivers v. United States*, 777 F.3d 1306, 1316 (11th Cir. 2015) (citation omitted).

### B. Ineffective Assistance of Counsel

Criminal defendants have a Sixth Amendment right to reasonably effective assistance of counsel. In *Strickland v. Washington*, the Supreme Court established a two-part test for determining whether a convicted person may have relief under the Sixth Amendment. 466 U.S. 668, 687-88 (1984). A petitioner must establish: (1) counsel's performance was deficient and fell below an objective standard of reasonableness; and (2) the deficient performance prejudiced the defense. *Id.* Failure to show either *Strickland* prong is fatal. *See Kokal v. Sec'y, Dep't of Corr.*, 623 F.3d 1331, 1344 (11th Cir. 2010) ("a court need not address both *Strickland* prongs if the petitioner fails to establish either of them").

When considering the first prong, "courts must 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Sealey v. Warden*, 954 F.3d 1338, 1354 (11th Cir. 2020) (quoting *Strickland*, 466 U.S. at 689).

The second prong requires the defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.* at 1355 (quoting *Strickand*, 466 U.S. at 694).   "A reasonable probability is a probability sufficient to undermine confidence in the outcome, which is a lesser showing than a preponderance of the evidence." *Id.* (cleaned up).  "At the same time, "it is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding' because 'virtually every act or omission of counsel would meet that test." *Id.* (quoting *Strickland*, 466 U.S. at 693).

## Analysis

### A. Ground 1

Benitez accuses Harris of "overlook[ing] or miscomprehend[ing] the governing law and advis[ing] Mr. Benitez that the government could not prove the charges as indicted." (Doc. 1 at 13).  He claims that if Harris "had told Mr. Benitez that he could be convicted for a dangerous weapon that was not a firearm as some kind of lesser included offense, then he would have pleaded guilty and at least received his three level acceptance of responsibility." (*Id.*).

The record refutes this ground.  Not only did Harris understood the government's burden of proof on Count 1, he explained it on the record with Benitez present.  At the June 4, 2015 hearing, Harris argued,

> the United States does not have to prove that it was a firearm to have a jury convict him of [Count 1.]  A dangerous weapon includes a multitude of things, including, in the commentary, a toy gun, so the United States has to prove some sort of device that could be used as a dangerous weapon.  They don't have to prove it's a firearm.

(Cr-Doc. 125 at 5).  At the July 13, 2015 hearing, the Court agreed with Harris's argument and ruled—again with Benitez present—that Benitez could plead guilty to Count 1 without admitting the "dangerous weapon" he used in the robbery was a firearm.  (*Id.* at 3).

At the pretrial conference, Harris explained the defense strategy was to admit to the robbery and challenge the "dangerous weapon" element of Count 1 and all of Count 2.  (Cr-Doc. 128 at 27).  Benitez confirmed that he agreed with this strategy.  (*Id.*).  And it worked.  The jury acquitted Benitez of Count 2, and he avoided a six-point "use of a firearm" sentencing enhancement.  Benitez has not satisfied either *Strickland* prong.  The Court denies Ground 1.

## B. Ground 2

Benitez claims, "except for court and counsel's confusion on [sic] vacillation over what the law meant, then Mr. Benitez would have pleaded guilty to the robbery and to the use of the toy gun; and the 924(c) would have

been dismissed." (Cr-Doc. 138 at 14). None of that is supported by the record. First, as explained above, Harris understood the relevant law and explained it in Benitez's presence. Second, the Court's position did not vacillate. It held—at Benitez's request—that the "firearm phrase" in Count 1 of the Indictment was surplusage, and it maintained that position. Third, the Court allowed Benitez to plead guilty to Count 1 without admitting he used a firearm, and he chose not to do so. And fourth, there is no suggestion that the government would have dismissed Count 2. In fact, both sides expected to try Count 2 if Benitez pled guilty to Count 1. The Court denies Ground 2.

### C. Ground 3

Benitez argues two of the Court's sentencing rulings—rejecting an acceptance-of-responsibility reduction and applying a dangerous-weapon enhancement—were "debatable," and Greenlee was constitutionally deficient for failing to challenge them on appeal.

This claim fails on its face because attorneys are not required to raise every non-frivolous claim. *See Jones v. Barnes,* 463 U.S. 745, 753 (1983). In fact, it is often wise to forgo weak claims on appeal because "[a] brief that raises every colorable issue runs the risk of burying good arguments." *Id.* at 753. And these sentencing issues would have been weak, if not frivolous, on appeal.

The standard for reviewing a district court's decision regarding acceptance of responsibility is clear error—meaning the decision can only be

reversed if it leaves the appellate court with a definite and firm conviction that a mistake was committed. *United States v. Calhoon*, 97 F.3d 518, 531 (11th Cir. 1996); *United States v. Rothenberg*, 610 F.3d 621, 624 (11th Cir. 2010) (quotation omitted). "Because a sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility, the district court's decision in that respect will not be overturned unless the facts in the record clearly establish that the defendant actually accepted personal responsibility." *United States v. Escudero*, 761 F. App'x 949, 953-954 (11th Cir. 2019). A "debatable" argument cannot satisfy this stringent standard of review. Thus, Greenlee was not deficient for choosing not make it, and Benitez was not prejudiced by that decision.

Benitez's dangerous-weapon argument is even more plainly frivolous. He won this dispute at sentencing. The government argued for a six-point increase for use of a firearm. Benitez insisted that a four-point dangerous-weapon increase should apply instead. In fact, his defense at trial was premised entirely on the claim that he used a dangerous weapon that was not a firearm in the robbery. The Court sided with Benitez. Greenlee could not have raised this issue on appeal.

The Court denies Ground 3.

### D. Ground 4

Finally, Benitez faults Harris and Greenlee for how they framed objections to the Court's omission of the firearm phrase from the jury instructions on Count 1. Harris argued the omission amounted to an improper constructive amendment of the Indictment. (Cr-Doc. 130 at 166-69). The Court disagreed, based on its earlier ruling that the firearm phrase was surplusage. (Id. at 171-73). On appeal, Greenlee challenged the Court's decision as either a constructive amendment of or a material variance from the Indictment. The Eleventh Circuit rejected both arguments. It found no constructive amendment because "removal of the firearm phrase from the jury instruction did not broaden the elements of the conviction under Count One." Benitez, 732 F. App'x at 792. And it found "no variance here between the indictment and the evidence at trial because both indicated that Benitez had a firearm of some sort (either real or a replica)." Id. at 793.

Benitez believes his attorneys should have argued the Court exceeded its jurisdiction by omitting the firearm phrase from the jury instructions. This ground fails for two reasons. First, it rests on a premise the Eleventh Circuit already rejected—that the Court changed what the government needed to prove to convict on Count 1. Second, it is beyond dispute that the Court's jurisdiction includes the authority to instruct the jury on the law. See Fed. R.

12

Crim. P. 30.  If anything, framing the objection as a jurisdictional issue would have weakened the argument.  The Court denies Ground 4.

## EVIDENTIARY HEARING

A court must hold an evidentiary hearing "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255(b).  "If the petitioner alleges facts, that if true, would entitle him to relief, then the district court should order an evidentiary hearing and rule on the merits of his claim." *Griffith v. United States*, 871 F.3d 1321, 1329 (11th Cir. 2017) (quoting *Aron v. United States*, 291 F.3d 708, 714-15 (11th Cir. 2002)).  A petitioner need only allege, not prove, facts that would entitle him to relief. *Id.*  However, the alleged facts must be reasonably specific and non-conclusory. *Aron*, 291 F.3d at 715 n.6; *see also Allen v. Sec'y, Fla. Dep't or Corr.*, 611 F.3d 740, 745 (11th Cir. 2010), *cert denied*, 563 U.S. 976 (2011). Further, if the allegations are "affirmatively contradicted by the record" and "patently frivolous," the court need not hold an evidentiary hearing. *Id.*

The Court finds an evidentiary hearing unwarranted here.  Benitez has not alleged facts that, if proven, would entitle him to relief.

## CERTIFICATE OF APPEALABILITY

A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1).  Rather, a district court must first issue a certificate of appealability (COA).  "A [COA]

may issue...only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, a petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were adequate to deserve encouragement to proceed further," *Miller–El v. Cockrell*, 537 U.S. 322, 335–36 (2003) (citations omitted). Benitez has not made the requisite showing here and may not have a certificate of appealability on any ground of his Motion.

Accordingly, it is now

**ORDERED:**

Petitioner Jose Benitez's Motion Under 28 U.S.C. §2255 to Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody (Doc. 1; Cr-Doc. 138) is **DENIED**. The Clerk shall enter judgment, terminate all motions and deadlines, and close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on April 19, 2021.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

SA: FTMP-1
Copies: All Parties of Record

14